UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GARY BEAUMONT,**<br><br>**Plaintiff,**<br><br>v.<br><br>**VANGUARD LOGISTICS SERVICES (USA), INC. and JOHN DOES 1-10 (Fictitious Name) and ABC COMPANIES 1-10 (Fictitious Name),**<br><br>**Defendants.** | Civ. No. 2:22-cv-02715 (WJM)<br><br>OPINION |

In this action for property losses and damages to a container shipment transported from Sydney, Australia to Ballston Spa, New York, Defendant Vanguard Logistics Services (USA), Inc. ("VLS" or "Defendant") moves for transfer of venue pursuant to 28 U.S.C. § 1404(a) to the District Court for the Southern District of New York. ECF No. 6. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion to transfer venue is **granted**.

### I. BACKGROUND

Plaintiff Gary Beaumont ("Beaumont" or "Plaintiff"), a resident of New York, contracted with VLS for the carriage of cargo containing a motorcycle, a bicycle, and other personal items, from Australia to the United States. *See* Compl., Count One, ¶ 3, ECF No. 1. The contract of carriage between VLS and Beaumont is reflected in a Bill of Lading dated February 5, 2021 issued to Plaintiff ("B/L") for the transport by ship of one crate from Sydney, Australia, to Ballston Spa, New York. *See* Decl. of George P. Hassapis in Supp. of Mot. to Transfer ("Hassapis Decl.") at ¶ 6; B/L attached as Ex. 2 to Hassapis Decl., ECF No. 6-3. Plaintiff alleges that the crate was shipped from Sydney to Los Angeles and then transported by rail to Carteret, NJ where it was damaged while in VLS' custody at its warehouse prior to clearing customs and delivery of the crate to him. *See* Compl., ¶¶ 5, 7; Pl.'s Opp'n Br. at 4.

On April 7, 2022, Plaintiff filed suit in New Jersey state court claiming negligence and violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA").

1

Subsequently, Defendant removed the action on the basis of 28 U.S.C. § 1332 diversity jurisdiction and 28 U.S.C. § 1441(b) maritime jurisdiction.

Defendant now seeks transfer of this matter to the Southern District of New York pursuant to a forum selection clause in the B/L that states that unless VLS voluntarily submits to or waives jurisdiction, "[a]ll disputes in any way relating to this Bill of Lading shall be determined by the United States District Court for the Southern District of New York to the exclusion of the jurisdiction of any other courts in the United States or the courts of any other country." B/L, ¶ 21(b).

In opposing transfer, Plaintiff submits that: 1) no admiralty jurisdiction exists because damage to the cargo occurred on land upon rail transport to Carteret, NJ; 2) the standard terms on the back of the B/L, including the forum selection clause, are unenforceable contracts of adhesion; and 3) the forum selection clause and the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 et seq., (effective Oct. 6, 2006), are inapplicable because the cargo was damaged during transport on land by means other than what was expressly provided for in the B/L. These contentions will be addressed in turn.

## II. DISCUSSION

### A. Admiralty Jurisdiction

At the outset, Plaintiff disputes that admiralty jurisdiction exists because the cargo was damaged on land. However, the determination of admiralty jurisdiction does not turn on where the loss occurred. Rather, the dispositive inquiry rests on "'the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (citing *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)); *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611 (1991) ("[T]he trend in modern admiralty case law ... is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime."). As explained by the Supreme Court, "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." *Kirby*, 543 U.S. at 27.

Here, the B/L required performance substantially by sea. That the crate's transport included some journey on land that was not specifically described in the B/L does not defeat the maritime nature of the contract. *See, e.g., id.* at 24 (finding contract's primary objective was transportation of goods by sea from Australia to East Coast of United States and explaining that final leg of journey to Huntsville, AL by rail did not "alter the essentially maritime nature of the contracts."). Indeed, "the fundamental interest giving rise

2

to maritime jurisdiction is the protection of maritime *commerce*. ... Maritime commerce ... is often inseparable from some land-based obligations." *Id.* at 25 (internal quotes and citation omitted). Thus, as here, "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."[1] *Kirby*, 543 U.S. at 22–23; *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991) (applying federal law to enforceability of forum selection clause in admiralty case).[2]

B. Motion to Transfer Standard

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This section applies to admiralty actions despite the statutory language referring to "civil" actions. *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 505 (E.D. Pa. 2015); *see, e.g., Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 25–27 (1960) (applying § 1404 in admiralty action).[3] The district court has wide discretion in this decision. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973). "In deciding a § 1404(a) motion, a court is not limited to the pleadings, and may consider affidavits and other evidence." *Roller v. Red Payments L.L.C.*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019); *see also Plum Tree, Inc.*, 488 F.2d at 756-57.

Typically, in a case where there is no forum selection clause, a court balances "the three enumerated factors in §1404(a) (convenience of the parties, convenience of the witnesses, or interests of justice)" along with a non-exhaustive list of various private and public interest factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In contrast, where there is a valid and enforceable forum selection clause, the parties' bargained for agreement as to the most proper forum should be given "controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist.*

---

[1] Plaintiff has not argued that this dispute is inherently local. *Compare Kirby*, 543 U.S. at 28 (applying federal law where no specific Australian or state interest defeated federal interest in uniformity of general maritime law) *with Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313-14 (1955) (applying state law to maritime insurance contract due to state's broad regulatory power over insurance industry).

[2] Even absent admiralty jurisdiction, in diversity cases, "the effect to be given a contractual forum selection clause" is determined by federal not state law because questions of venue and the *enforcement* of a forum selection clause is a procedural, rather than substantive, inquiry. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181-82 (3d Cir. 2017) (explaining that *enforceability* of forum selection clause (whether compelling compliance is unreasonable or clause resulted from fraud or overreaching) is governed by federal law in contrast to the *scope or interpretation* of a forum selection clause (whether the claims and parties are subject to the clause), which is governed by state law).

[3] Section 1404(a) also applies to the venue question in a diversity jurisdiction case. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) (holding that federal law, specifically 28 U.S.C. § 1404(a), rather than substantive contract law, governed whether to grant motion to transfer a diversity case to venue provided in forum selection clause).

*of Texas*, 571 U.S. 49, 63 (2013). Additionally, in a § 1404(a) analysis where a valid forum selection clause is present, the plaintiff's choice of forum merits no weight and the parties' private interests[4] should be weighed entirely in favor of the preselected forum. *Id.* at 63-66. In short, only public interest factors[5] remain to be balanced and "[i]n all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain." *Id.* at 66. Although the party seeking a § 1404(a) transfer usually bears the burden of persuasion, *see In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018), where there is a valid forum selection clause, the party seeking to avoid the clause bears the burden of showing that public interest factors "overwhelmingly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 66; *Jumara*, 55 F.3d at 879.

Because the existence of a valid forum selection clause changes the § 1404(a) calculus, the Court must first examine whether the forum selection clause at issue is enforceable. Federal law applies to this inquiry since, as discussed above, the interpretation of a maritime contract is governed by federal law.[6]

C. Forum Selection Clause

*a. Contract of Adhesion*

Generally, a federal court sitting in admiralty should enforce forum selection clauses as prima facie valid absent a showing by the resisting party that to do so would be "unreasonable" under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (noting courts must honor a valid forum selection clause "in all but the most unusual cases."). "A forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' [], either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' [], or that the clause was procured through 'fraud or overreaching,' []." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219

---

[4] Private interest factors include: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara*, 55 F.3d at 879.

[5] Public interest factors have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-880. "[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations" given that a court's familiarity with the applicable law is a potential factor. *Atl. Marine*, 571 U.S. at 64-65.

[6] Notably, Plaintiff disputes that admiralty jurisdiction exists, but only cites to federal caselaw.

(3d Cir. 1991) (citing *M/S Bremen*, 407 U.S. at 15, 18); *CBJ, Inc. v. M/V HANJIN HONG KONG*, No. CIV. 99-4925, 2000 WL 33258660, at *2 (D.N.J. Sept. 22, 2000).

Despite Plaintiff's claims otherwise, a forum selection clause is presumed valid even when it is part of an adhesion contract. *See Carnival Cruise*, 499 U.S. 585 (upholding non-negotiated forum selection clause in a "form ticket contract"); *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir.1997) (finding that whether or not the bill of lading was contract of adhesion was "of no relevance" in determining whether forum selection clause should be enforced); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 686–87 (D.N.J. 1998) (collecting cases where courts have rejected argument that there is no presumption of validity because forum selection clause is part of adhesion contract); *Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F. Supp. 2d 245, 248 (E.D.N.Y.2001) ("[c]ourts have consistently rejected the argument that forum selection clauses contained in pre-printed contracts are unenforceable." (citation omitted)).

Moreover, Plaintiff has not demonstrated, or even alleged, that litigating in New York would be so gravely difficult and inconvenient as to deprive him of his day in court, or that the forum selection clause was the result of fraud. Instead, Plaintiff argues that the B/L is unenforceable because it is fundamentally unfair. *See Carnival Cruise*, 499 U.S. at 595 ("forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness"). In *Carnival*, the Court found no evidence of fraud or overreaching and no indication of bad faith that the cruise ship set Florida as the selected forum to discourage passengers from pursuing legitimate claims given that Florida was the location of petitioner's principal place of business and the port of departure and return for many of its cruises. *Id.* at 595. Citing *Carnival*, Plaintiff suggests that the forum selection of New York is likewise unfair because Defendant's "head office" is in Long Beach, CA and none of Defendant's offices are located in New York. Plaintiff, however, provides no evidence to support such assertions. In any event, the Court declines to conclude that the preselection of a New York forum is fundamentally unfair when Plaintiff is a resident of New York and the cargo at issue was contracted to be delivered to New York.

Next, Plaintiff also maintains that under *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), the forum selection clause at issue is a "material alteration" that required specific consent and that a "reasonably prudent person" would not have been aware of the forum selection clause located on the back of the B/L. However, Plaintiff's reliance on *Berkon* is misplaced. Apart from not being binding on this Court, *Berkon* is inapposite. At issue was a forum selection clause that was part of an electronic contract of adhesion court that required the consumer to click on a "terms of use" hyperlink and scroll down to the seventh page of the document to find the choice of law and forum selection clause. *Id.* at 375. In that case, "[w]here the assent to terms of a contract is 'largely passive,' as is often the case with electronic contracts of adhesion," the court noted that "'the contract-formation question will often turn on whether a reasonably prudent offeree would be on [inquiry] notice of the term[s] at issue.'" *Id.* at 393 (citation omitted). In contrast, here the

B/L here is not an electronic contract of adhesion that raises issues of sufficient notice.[7] Rather, a copy of the B/L, which contained the forum selection clause on the reverse side, was provided to Plaintiff prior to the container's loading in Sydney. *See* Hassapis Decl., ¶ 6, 8, 9.

In sum, Plaintiff has failed to show that the forum selection clause should not be enforced as prima facie valid because it is included in a contract of adhesion or unreasonable or unfair.[8]

b. *Damage on Land*

Plaintiff insists that he is not bound by the forum selection clause because damage to his cargo did not occur during the intermodal carriage from Australia to New York, but on land in Carteret, NJ during a portion of the journey that was not expressly identified in the B/L. Therefore, Plaintiff characterizes his claim as a state law claim for negligent bailment.

The B/L, however, expressly provides for "through" transportation:

> When either the Place of Receipt or Place of Delivery set forth herein is an inland point or place other than the Port of Loading (Through Transportation basis), the Carrier will procure transportation to or from the sea terminal and such inland point(s) or place(s)…

B/L, ¶ 5. By its terms, the B/L is a "through" bill of lading, that is, a contract for "transportation across oceans and to [an] inland destination[] in a single transaction." *Kirby*, 543 U.S. at 25-26. Although Plaintiff complains that the B/L did not specifically identify the land route from the port of entry, the carriage of cargo from Sydney to Ballston invariably had to include transport by land in the final leg because Ballston Spa, NY is an inland point located about 30 miles north of Albany, NY. Hence land transport was necessary to complete performance of the contract. *See also* B/L, ¶ 12 (permitting Carrier to "use any means of transport (water, land and/or air) or storage" at any time and without notice to consignee). As such, the occurrence of damage while on land does not render the forum selection clause unenforceable.[9]

---

[7] In *Carnival Cruise*, the Court specifically noted that it was not addressing the question of sufficient notice of the forum clause. *Carnival Cruise*, 499 U.S. at 590.

[8] Given this ruling, the Court need not address Defendant's additional contention that Plaintiff has accepted and is bound by the terms of the B/L because he has sued on it even though the Complaint alleges negligence and violations of New Jersey CFA rather than breach of contract.

[9] Because the cargo was damaged on land, Plaintiff contends that COGSA is inapplicable. However, "[a]ll cargo shipments carried by sea to or from the United States are subject to COGSA." *Fireman's Fund*, 131 F.3d at 1339. Moreover, the B/L expressly extends the application of COGSA to "the entire time the Carrier is responsible for the

D. 28 U.S.C. §1404(a) Analysis

Because the B/L contains an enforceable forum selection clause, the Plaintiff's choice of forum merits no weight and the parties' private interests weigh entirely in favor of the preselected forum. Furthermore, Plaintiff has not argued that any of the public interest factors that remain to be balanced weigh against transfer, nor has Plaintiff shown that this is such an unusual or exceptional case that the parties' preselected forum should be disregarded. Thus, the parties' contracted forum - the Southern District of New York – must be given controlling weight as the proper forum.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion to transfer this action to the United States District Court for the Southern District of New York is **granted**. An appropriate Order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: July 19, 2022

---

Goods," including "after discharge from the vessel." B/L, ¶ 4(a). By the B/L's express terms, COGSA governs the land transport of the goods at issue. *See Kirby*, 543 U.S. at 29 (recognizing that parties may extend COGSA's applicability by contract to the entire period in which goods would be under carrier's responsibility, including period of inland transport). Accordingly, Defendant argues that COGSA preempts Plaintiff's state law claims. *See Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd.*, 215 F.3d 1217, 1220 (11th Cir. 2000) ("COGSA, when it applies, supersedes other laws."); *Amazon Produce Network, LLC v. M/V LYKES OSPREY*, 553 F. Supp. 2d 502, 506 (E.D. Pa. 2008) (COGSA "provides an exclusive remedy for damage to cargo incurred during carriage between foreign and United States ports."). However, the Court need not resolve this dispute to rule on the pending transfer motion.